J-A25009-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY SULLIVAN, | : | |
| | : | |
| Appellant | : | No. 3003 EDA 2012 |

Appeal from the Judgment of Sentence September 17, 2012,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0003098-2010

BEFORE:  DONOHUE, WECHT and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:              **FILED NOVEMBER 06, 2014**

Anthony Sullivan ("Sullivan") appeals from the judgment of sentence entered by the Court of Common Pleas, Philadelphia County, following convictions of incest, 18 Pa.C.S.A. § 4302(a), and endangering the welfare of a child as a felony of the third degree, 18 Pa.C.S.A. § 4304(a).  For the reasons that follow, we affirm.

A summary of the relevant facts and procedural history of this case is as follows.  Sullivan is the biological father of 10 children, including V.T., a daughter.  V.T. lived with her mother but would visit Sullivan at his two-bedroom apartment.  In 2004, when V.T. was 14, Sullivan began talking to her about boys and sex.  V.T. was a virgin at the time and Sullivan would often talk to her about losing her virginity.  After a couple of months, V.T. lost her virginity and Sullivan was the first person she told.

_____

*Retired Senior Judge assigned to the Superior Court.

Shortly thereafter, V.T.'s mother could no longer care for V.T. because of a substance abuse problem and an abusive husband. As a result, V.T. moved in with Sullivan. After V.T. moved in with him, Sullivan became strict, overprotective, and jealous. He then began to sexually abuse her. Sullivan started by sucking on V.T.'s breasts and neck, leaving "passion marks" on her neck. Sullivan would ask V.T. to take her socks off while she watched TV and begin masturbating and would also masturbate while watching her shower. Eventually, Sullivan and V.T. began to engage in oral sex and sexual intercourse. Sexual activity occurred daily. At one point, Sullivan told V.T. he wanted her to have his baby.

Sullivan used sex as a control mechanism. If V.T. refused to have sex with him, Sullivan would deny her food and clothing and would ignore her. Sullivan would also tell V.T. about his sexual activity with three of her sisters in an attempt to bribe her and would tell her what positions each sister preferred. Sullivan displayed pictures of V.T.'s sisters in lingerie in the living room along with naked pictures of other women. On one occasion, while V.T. was in the kitchen, Sullivan got his camera and told her to take off all of her clothes. Sullivan told her how to position her body as he took pictures of her, asking her to point her toes and arch her back. Sullivan also asked her to take naked pictures of him as well as photograph him as he got an erection. Sullivan uploaded the pictures to his computer. V.T. viewed naked

pictures of her sisters on his computer, including pictures of her sisters laying in Sullivan's bed naked.

After approximately two years, at the age of 16, V.T. moved back to her mother's house. V.T. did not tell her mother or anyone else about the sexual abuse. In 2009, however, V.T. became concerned about her seven- and eight-year-old sisters who were living with Sullivan. V.T. contacted the Department of Human Services ("DHS") to report Sullivan for sexual abuse. V.T. initially attempted to report the sexual abuse anonymously. When DHS told V.T. that she had to disclose her name in order for DHS to act, she provided her name. DHS assigned a caseworker, Vivian Boyll ("Boyll"), to work with V.T. and investigate the allegations. After V.T. informed Boyll of the abuse that occurred, Boyll contacted the police. Detectives from the Philadelphia Police Department's Special Victims Unit ("SVU") contacted V.T. and interviewed her at the station.

On January 8, 2010, detectives, along with the SWAT team, went to Sullivan's apartment to execute a search warrant. The detectives recovered cameras, DVDs, disk transfer flash adaptors, audio cassettes, wireless USB adaptors, CDs, a DVD drive, a photo album, VHS tapes, and a computer. Sullivan was not at the apartment. Approximately five to six hours after police executed the search warrant, however, Sullivan turned himself in to the police. Sullivan was arrested and charged with rape, involuntary deviate sexual intercourse, unlawful contact with a minor, statutory sexual assault,

sexual assault, incest, endangering the welfare of a child, indecent assault, and sexual abuse of children.[1]

Nearly two months after Sullivan was arrested, Simone Brown ("Brown"), who had been romantically linked to Sullivan at the time of his arrest, contacted the SVU to inform them that prior to his arrest, Sullivan asked Brown to take a white iPhone, a black iPhone, and other electronics, including a laptop from his car, to her house. She also informed them that while he was held at a correctional facility, Sullivan made several phone calls to her and directed her, using coded language that referenced the Disney movie, "Up," to destroy his laptop and the iPhones. Sullivan also informed Brown that he had thrown his other laptop computer in the East River in New York. After examining the two iPhones, Brown discovered several nude and partially nude photographs of Sullivan's adult daughters and other unrelated adults, as well as photographs of a minor girl in a bikini and in a bra. Disturbed by her findings, Brown contacted the SVU to report that she had the devices.

On March 4, 2010, a detective went to Brown's house, recovered the items, and took a statement from Brown. A forensic analysis of these devices revealed 261 photographs on the laptop, 19 photographs on the

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 6318(a)(1), 3122.1, 3124.1, 4302, 4304(a), 3126(a)(8), 6312(b).

white iPhone, and 281 photographs on the black iPhone, depicting nude or partially nude individuals.

On April 26, 2012, the Commonwealth presented a motion *in limine* to the trial court to introduce the photographs recovered from Sullivan's laptop and iPhones at trial pursuant to Rule 404(b) of the Pennsylvania Rules of Evidence. After argument, the trial court granted the Commonwealth's motion over Sullivan's objections.

A jury trial commenced on April 30, 2012. At trial, the Commonwealth presented the testimony of the SVU detectives, V.T., V.T.'s mother, V.T.'s sister, L.S., and Boyll. Defense counsel objected to L.S. and Boyll's testimony regarding V.T.'s statements to them because they were neither prompt complaints nor prior consistent statements. The trial court overruled the objections and permitted L.S. and Boyll to testify.

L.S. testified that she would notice passion marks on V.T.'s neck at school and also testified that she saw photographs of her sisters in Sullivan's apartment that depicted them partially nude. She also testified that when she was 19 or 20 years old, Sullivan asked her if he could take a picture of her in her bathing suit. L.S. did not allow him to take her picture. L.S. further testified that V.T. told her that Sullivan "was putting passion marks on her, they had sex, and that's about it." N.T., 5/2/12, at 232. However, on cross-examination, L.S. testified that she had conversations with her

sisters about Sullivan, but never knew that sex was involved before the SVU contacted her.

During Boyll's testimony, Boyll recounted the statements V.T. made to her and testified regarding her attempts to contact Sullivan in the course of her investigation. Boyll testified that she attempted to call him, but the phone number she had for him was no longer a working number. Boyll also testified that she left a notification letter indicating that she wished to speak with him at his apartment approximately one month before the search warrant was executed by the SVU detectives and the SWAT team. N.T., 5/2/12, at 202. Sullivan moved for a mistrial, arguing that Boyll's testimony suggested that his failure to respond to Boyll was evidence of his guilt. The trial court denied Sullivan's request for a mistrial.

On May 8, 2012, the jury convicted Sullivan of incest and endangering the welfare of children. The jury found Sullivan not guilty of sexual abuse of children, and could not reach a verdict on the remaining charges. On September 17, 2012, the trial court sentenced Sullivan to a term of incarceration of 13 years and four months to 27 years.

Sullivan timely filed a notice of appeal, a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and a supplemental statement of matters complained of on appeal. On appeal, Sullivan raises the following issues for our review:

1.  Did not the trial court abuse its discretion in granting the Commonwealth's motion to introduce photographic evidence under Pennsylvania Rule of Evidence 404(b) because: (1) the photographs were not sufficiently shown to be the acts of [Sullivan]; (2) the photographs did not prove a common plan, scheme, or design; (3) the photographs did not prove a motive or intent; (4) the photographs were neither used to coerce nor related to the coercion of the complainant as she did not observe the majority of the photographs; (5) the photographs are not relevant to rebut a claim of fabrication where the purported photographic acts do not regard the specific crime alleged but rather improperly introduced character evidence; and (6) the prejudicial effect of the photographs outweighs any probative value, especially in those instances where the record does not establish that [Sullivan] took or showed the complainant the pictures?

2.  Did not the trial court abuse its discretion in permitting L.S. and Vivian Boyll to testify regarding the complainant's statements to them pursuant to Rule of Evidence 613, regarding prior consistent statements, or otherwise as prompt complaint testimony, where the statements were not prompt, arose after the motive to fabricate, and did not rebut any impeachment of the complainant?

3.  Did not the trial court abuse its discretion in denying [Sullivan's] motion for a mistrial because statements regarding attempts to contact [Sullivan] and his lack of response raised an impermissible inference of his failure to speak in violation of his right to remain silent?

Sullivan's Brief at 3-4.

For his first issue on appeal, Sullivan argues that the trial court abused its discretion when it "improperly allowed the Commonwealth to introduce, discuss and publish to the jury hundreds of photographs" under Rule 404(b)

- 7 -

of the Pennsylvania Rules of Evidence. *Id*. at 15. These photographs included:

> 1. Photographs depicting E.B.[, a minor cousin of Sullivan's daughter,] and other clothed minors;
>
> 2. Photographs depicting V.T.'s adult sisters in various stages of undress;
>
> 3. Photographs depicting unrelated adults in various stages of undress;
>
> 4. Photographs of Sullivan nude with unrelated adults[;]
>
> 5. Photographs depicting appropriately clothed members of Sullivan's family or irrelevant physical objects (such as a motorcycle).

*Id*. at 17-18 (footnote omitted).

Our well-settled standard of review of a trial court's admission of evidence is as follows:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Commonwealth v. Reese*, 31 A.3d 708, 716 (Pa. Super. 2011) (internal citations omitted).

Rule 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

actions in conformity therewith." Pa.R.E. 404(b)(1). However, evidence of prior crimes, wrongs, or acts "may be introduced for other limited purposes, including, but not limited to, establishing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, common scheme or design, *modus operandi*, and the natural history of the case." Pa.R.E. 404(b)(2); **Commonwealth v. Kinard**, 95 A.3d 279, 284 (Pa. Super. 2014) (citing **Commonwealth v. Brookins**, 10 A.3d 1251, 1256 (Pa. Super. 2010), *appeal denied*, 22 A.3d 1033 (Pa. 2011)). The trial court may admit the evidence for these limited purposes if the probative value of the evidence outweighs its potential prejudicial effect. Pa.R.E. 404(b)(2).

In this case, the Commonwealth presented a motion *in limine* seeking to introduce all of the complained-of photographs at trial as circumstantial evidence to prove that Sullivan had sexual relationships with his daughters and that Sullivan took nude photographs of V.T. N.T., 4/27/12, at 9-10. The Commonwealth specifically argued that the photographs established circumstantial proof that the defendant either took the photographs or knowingly possessed the photographs and that the photographs established a common scheme or plan by Sullivan. **Id.** at 16.

The trial court determined that the photographs were admissible under Rule 404(b) under the common scheme or design exception and the *res gestae* exception. Trial Court Opinion, 8/23/13, at 12. The trial court

- 9 -

opined that the evidence adequately demonstrated that the photographs were acts of Sullivan because the photographs were on the walls of his home, on his computer, on his cellphones, were taken inside of his apartment, and because he planned the destruction of the electronic devices that contained the photographs. *Id.* Furthermore, the trial court determined that the photographs demonstrated "a common design on the part of [Sullivan] to photograph his daughters in the nude and to create a sexualized environment within the home," and that the photographs were part of the history of the case, "which helped the jury understand the sequence of events leading to [Sullivan's] arrest." *Id.* The trial court concluded that it properly admitted the photographs because the photographs were relevant to the charge of sexual abuse, that the probative value of the photographs outweighed their prejudicial impact, and because the evidence was "critically important" "due to the lack of physical evidence of sexual abuse, [V.T.'s] delay in reporting the abuse, [Sullivan's] destruction of evidence, and the defense that V.T. fabricated the allegations." *Id.* at 13.

Sullivan asserts that the trial court erred because the photographs fail to meet the requirements for admission under Rule 404(b). Sullivan's Brief at 18. Specifically, Sullivan argues that the Commonwealth failed to establish that Sullivan took or knowingly possessed the photographs, and

that the photographs were not relevant, did not serve a permissible purpose under Rule 404(b), and were unduly prejudicial. *Id.* at 19-31.

We begin by addressing the Commonwealth's assertion that Sullivan waived his claims relating to the photographs in the last three categories – those depicting unrelated adults, Sullivan nude with unrelated adults, and members of Sullivan's family or irrelevant physical objects. Commonwealth's Brief at 16. The Commonwealth argues that Sullivan "fails to identify any specific photograph that was allegedly improperly admitted […] [and that] he raised no objection at trial when these allegedly objectionable photographs were admitted." *Id.*

A review of the record reveals that although Sullivan objected to the introduction of photographs of V.T.'s sisters during the hearing on the Commonwealth's motion *in limine*, *see* N.T., 4/27/12, at 7-22, Sullivan failed to object to the photographs of Sullivan's appropriately clothed family members and irrelevant physical objects. With regard to the photographs of Sullivan and the unrelated adults, Sullivan and the Commonwealth agreed to address any potential issues with the photographs at trial if the Commonwealth introduced them. N.T., 4/27/12, at 22-24. When the Commonwealth introduced these photographs at trial, however, Sullivan did not object. *See* N.T., 4/30/12, at 73-76, 79, 115-16. Accordingly, we conclude that Sullivan's failure to object to these photographs at either the hearing on the motion *in limine* or at trial constitutes waiver and therefore,

we need not address the merits of these claims. **See Blumer v. Ford Motor Co.**, 20 A.3d 1222, 1232 (Pa. Super. 2011) ("[I]f the trial court defers ruling on a motion *in limine* until trial, the party that brought the motion must renew the objection at trial or the issue will be deemed waived on appeal."); **Commonwealth v. Shamsud-Din**, 995 A.2d 1224, 1228 (Pa. Super. 2010) (stating, "in order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of the proceedings; the failure to do so will result in waiver of the issue").

With regard to Sullivan's claim that the trial court erred in admitting the photographs of a minor, E.B., posing in a bikini, posing with her shirt open and displaying her bra, and posing while fully dressed, we begin by noting that all but three of the photographs admitted at trial were taken by E.B. herself. N.T., 4/27/12, at 5-6; N.T., 4/30/12, at 182. Furthermore, in the remaining three photographs, which appear to have been taken by someone else, E.B. was fully clothed. **Id**. at 182-83. These photographs do not constitute or suggest that Sullivan committed a bad act and thus do not warrant exclusion pursuant to Rule 404(b).

We find merit, however, to Sullivan's argument that the photographs of E.B. are not relevant for any purpose. Sullivan's Brief at 31. It is well settled that "[e]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence.'" **Commonwealth v. Williams**, 91 A.3d 240, 242 (Pa. Super. 2014); Pa.R.E. 401. According to the Commonwealth's argument, the photographs were being admitted as circumstantial evidence to establish that Sullivan took nude photographs of V.T., thereby proving sexual abuse of children under 18 Pa.C.S.A. § 6312(b).[2] The forensic analysis of Sullivan's computer and iPhones did not reveal any photographs of V.T. N.T., 4/30/12, at 29, 40. Instead, the only evidence offered by the Commonwealth was V.T.'s testimony that while she was in the kitchen, Sullivan told her to take off her clothes and then photographed her naked. N.T., 5/2/12, at 56. The self-taken photographs of E.B. in a bikini or photographs of E.B. fully dressed do not make it more or less probable that Sullivan took nude

_____

[2] Section 6312(b) of the Pennsylvania Crimes Code states:

> **(b) Photographing, videotaping, depicting on computer or filming sexual acts.—**
> (1) Any person who causes or knowingly permits a child under the age of 18 years to engage in a prohibited sexual act or in the simulation of such act commits an offense if such person knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed.
>
> (2) Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act commits an offense.

18 Pa.C.S.A. § 6312(b).

- 13 -

photographs of V.T. As the photographs of E.B. were not relevant, the trial court erred in admitting these photographs. Pa.R.E. 402 ("Evidence that is not relevant is not admissible.").

Nevertheless, we find this error to be harmless. An error is harmless if:

> (1) the prejudice to the appellant was nonexistent or *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hardy*, 918 A.2d 766, 777 (Pa. Super. 2007) (citing *Dent*, 837 A.2d 571, 582 n.2 (Pa. Super. 2003)).

Here, the prejudice to Sullivan was nonexistent or *de minimis*. The Commonwealth did not present extensive testimony or any argument with regard to the photographs of E.B. *See* N.T., 4/30/12, at 76-78, 80, 158-59, 184-85. Instead, the record reflects that the only testimony relating to the photographs of E.B. consisted of brief descriptions of what the pictures depicted, including what she was wearing in the picture and who appeared to be taking the picture. *Id*. Moreover, there was no testimony that suggested Sullivan sexually abused E.B. and the jury acquitted Sullivan of sexual abuse of a child, N.T., 5/8/12, at 12. As a result, we do not find that the introduction of the photographs of E.B. prejudiced Sullivan.

The remaining photographs depict V.T.'s adult sisters in various stages of undress. Sullivan's Brief at 22-31. We first address Sullivan's claim that the Commonwealth failed to establish that he took these photographs. Sullivan's Brief at 20-21. The trial court concluded that the evidence presented at trial demonstrated that Sullivan took the photographs because the photographs were on the walls of his home, on his computer, on his cell phones, were taken inside of his apartment, and because he tried to destroy the electronic devices on which the photographs were saved. Trial Court Opinion, 8/23/13, at 12. Sullivan argues that this evidence did not establish that he took the photographs because many individuals had access to Sullivan's apartment, computer, and cell phones. Sullivan's Brief at 20. In support of his argument, Sullivan cites to **Commonwealth v. Snyder**, 870 A.2d 336 (Pa. Super. 2005).

In **Snyder**, the defendant was charged with sexually abusing a seven-year-old child. **Id.** at 340. At trial, the Commonwealth sought to introduce a Polaroid photograph of the victim, posed nude in a sexually provocative manner, that a private investigator found in the defendant's home. **Id**. at 343. Although the Commonwealth did not have direct evidence that the defendant took the photograph, the trial court admitted the evidence after finding that circumstantial evidence established that the defendant took the photograph of the victim. **Id.** at 344. The trial court provided the following explanation in support of its conclusion:

> Here, the photograph was taken by someone who had access to the camera in the house. There were only two adults in the house, co-defendants in this case. The photograph was taken during the time frame that the alleged incidents of sexual misconduct occurred, i.e. when the child was seven or eight years old. The photograph is clearly of a sexual nature, with a child laying on the bed looking straight at the camera. Furthermore, the photograph was found in a location that the Defendant was known to have kept a videotape of sexual acts.

*Id.*

Sullivan argues that ***Snyder*** is inapposite to the case presently before this Court. Sullivan's Brief at 20. We disagree. In this case, as in ***Snyder***, the Commonwealth did not have direct evidence that Sullivan took the photographs of V.T.'s sisters, but presented testimony establishing circumstantial evidence that Sullivan took the photographs of V.T.'s sisters. V.T. testified that Sullivan told her that he took the photographs of her sister, M.S. N.T., 5/2/12, at 115. The photographs were taken in Sullivan's apartment. Some hung on his walls. Moreover, the photographs of V.T.'s sisters were found on Sullivan's computer and cell phones, devices that Sullivan asked Brown to destroy. Thus, just as we found in ***Snyder***, we conclude that the circumstantial evidence presented at trial establishes that Sullivan took the photographs of V.T.'s sisters. ***See Snyder***, 870 A.2d at 344. Accordingly, we find no error in the trial court's conclusion that Sullivan was the photographer.

Turning to the admissibility of the photographs, Sullivan argues that the photographs were not admissible as they do not serve a permissible purpose and they are unduly prejudicial. Sullivan's Brief at 22, 31. The record reflects that during argument on its motion *in limine*, the Commonwealth asserted that the pictures of V.T.'s sisters were relevant and admissible under Rule 404(b) to establish a common scheme or plan. N.T., 4/27/12, at 16. The trial court agreed, concluding that the photographs demonstrated "a common design on the part of [Sullivan] to photograph his daughters in the nude and to create a sexualized environment within his home." Trial Court Opinion, 8/23/13, at 12.

With regard to admitting evidence under the common scheme or plan exception, this Court has established that

> a determination of whether evidence is admissible under the common plan exception must be made on a case by case basis in accordance with the unique facts and circumstances of each case. However, we recognize that in each case, the trial court is bound to follow the same controlling, albeit general, principles of law. When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. ***Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator***. […]

*Commonwealth v. Smith*, 635 A.2d 1086, 1089 (Pa. Super. 1993) (emphasis added) (citing *Commonwealth v. Frank*, 577 A.2d 609, 614 (Pa. Super. 1990), *appeal denied*, 584 A.2d 312 (Pa. 1990)). "The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception." *Commonwealth v. Einhorn*, 911 A.2d 960, 967 (Pa. Super. 2006) (citing *Commonwealth v. Luktisch*, 680 A.2d 877, 879 (Pa. Super. 1996)).

> With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad conduct and that alleged in a current case. To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule— namely *a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question*.

*Commonwealth v. Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*) (emphasis added). The crimes must be "so related that proof of one tends to prove the others." *Id.* at 103.

In *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984 (Pa. Super. 2007), "a jury convicted the appellant of indecent assault, endangering the welfare of children, and corruption of minors, in connection with [the] appellant's ongoing sexual molestation of his six-year-old son." *Id.* at 985. On appeal, the appellant argued that the trial court improperly allowed testimony of his prior criminal convictions of indecent assault and endangering the welfare of children in connection with his ongoing sexual molestation of his 13-year-old

daughter. *Id.* at 987. A panel of this Court held that "testimony regarding [the] appellant's crimes against his other child was proper as it evinced a common plan." *Id.* at 987-88.

> The time frames of the abuse of the other child and of the victim were very close. […] Both molestations occurred in the family home and both involved [the] appellant's own children. Moreover, the nature of both molestations involved manipulation of the genitals by hand only; there were no allegations of any other type of sexual activity. The earlier offense was quite similar to the latter, and we find no abuse of discretion in the trial court's finding the probative value of the evidence outweighed the prejudiced incurred in admitting the evidence.

*Id.* at 988.

The record reflects that Sullivan's computer and iPhones contained hundreds of pictures of Sullivan's daughters. N.T., 4/30/12, at 64, 137. V.T. stated that Sullivan photographed her in his apartment while she was naked while she posed in a sexual manner. N.T., 5/2/12, at 56. He photographed her as a teenager. *Id.* Likewise, the photographs of V.T.'s sisters were taken in Sullivan's apartment, depicted the girls naked or partially naked, posing in a sexual manner, and there is evidence that at least one of the sisters was a teenager at the time the photographs were taken. *Id.* at 63. This exhibits a pattern by Sullivan, and the photographs are all in the same general location and are of the same class of victims, his daughters. *See Smith*, 635 A.2d at 1089. The crimes are sufficiently similar to demonstrate a "connective relevance" to the allegations at issue.

*See Ross*, 57 A.3d at 104. Accordingly, we find that the trial court did not abuse its discretion in admitting the photographs of Sullivan's daughters under the common plan or scheme exception.

This does not end our analysis. Once a trial court determines that prior act evidence is admissible for a proper purpose, we must "balance the need demonstrated by the Commonwealth for this evidence against its potential prejudice." *Commonwealth v. Ardinger*, 839 A.2d 1143, 1146 (Pa. Super. 2003). In *Commonwealth v. Weakley*, 972 A.2d 1182 (Pa. Super. 2009), this Court provided guidance on conducting an inquiry into "whether the probative value of the 'other crimes' evidence outweighs its presumptive prejudice." *Id.* at 1191. In *Weakley*, we stated:

> In conducting the probative value/prejudice balancing test, courts must consider factors such as the strength of the 'other crimes' evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and 'the degree to which the evidence probably will rouse the jury to overmastering hostility.'

*Id.* (citations omitted).

Applying these factors to the instant matter supports the trial court's determination that the probative value of the photographs of V.T.'s sisters outweighs its presumptive prejudice. As previously discussed, the photographs of V.T.'s sisters and the photographs V.T. claimed Sullivan took of her are patently similar as the photographs depicted Sullivan's nude

daughters, posed in a sexual manner. N.T., 4/30/12, at 64. Furthermore, the record reflects the Commonwealth's considerable need for this evidence given the absence of the photographs of V.T. and the defense's insinuation that V.T. lied about the photographs and the sexual abuse. *Id.* at 38-39. The Commonwealth's only alternative proof of the charges was V.T.'s testimony, the credibility of which was attacked by the defense. *Id.* at 37-40. The Commonwealth's evidence establishing the charge of sexual abuse therefore relied upon this circumstantial evidence. As this Court held in *Weakley*, "it is the specific purpose of the 'other crimes' evidence to give the jury insight into the significance of these circumstances." *Weakley*, 972 A.2d at 1191. We therefore conclude that the trial court did not err in its conclusion that the photographs were more probative than prejudicial, and thus, properly admitted the photographs under Rule 404(b).[3]

For his second issue on appeal, Sullivan argues that the trial court abused its discretion by permitting L.S. and Boyll to testify to the statements of sexual abuse V.T. made to them in 2009. Sullivan's Brief at 31. Sullivan argues that their testimony improperly bolstered the credibility of V.T. and that the trial court improperly permitted the Commonwealth to introduce the prior consistent statements before he made any attempt to impeach V.T.'s

---

[3] Based upon our determination that the photographs were properly admitted as evidence of Sullivan's common plan or scheme, we need not address Sullivan's remaining claims that the photographs do not satisfy any other recognized exception under 404(b) including intent, motive, or *res gestae*.

J-A25009-14

credibility. Sullivan's Brief at 32-33. The trial court determined that the testimony by L.S. and Boyll was admissible under Rule 613 of the Pennsylvania Rules of Evidence as prior consistent statements. Trial Court Opinion, 8/23/13, at 9; *see also* N.T., 5/2/12, at 175.[4]

Rule 613 of the Pennsylvania Rules of Evidence provides, in relevant part:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c) (rescinded and replaced effective March 18, 2013).[5]

Pursuant to this Rule,

> [a]dmission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied,

---

[4] The trial court also ultimately determined that V.T.'s statements were not admissible as a prompt complaint of a sexual assault. N.T. 5/2/12, at 175.

[5] As Sullivan's conviction occurred prior to the amendment of Rule 613, we use the pre-amended version here.

- 22 -

> inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.

*Commonwealth v. Baker*, 963 A.2d 495, 504 (Pa. Super. 2008) (citing *Commonwealth v. Hunzer*, 868 A.2d 498, 512 (Pa. Super. 2005)). "Pennsylvania law has long stated that [in sexual assault cases] the credibility of the complaining witness is *always* an issue." *Commonwealth v. Dillon*, 863 A.2d 597, 601-02 (Pa. Super. 2004) (emphasis in original) (citing *Commonwealth v. Bryson*, 860 A.2d 1101, 1104 (Pa. Super. 2004) (*en banc*)).

In this case, the trial court found that Sullivan's "entire defense centered around impeaching [V.T.'s] credibility." Trial Court Opinion, 8/23/13, at 10; *see also* N.T. 4/30/12, at 38. "Where, as here, it is apparent that the defense centers around impeaching the credibility of a witness, a prior consistent statement may, at the discretion of the trial court, be admitted before impeachment." *Commonwealth v. Beale*, 665 A.2d 473, 475-76 (Pa. Super. 1995) (citing *Commonwealth v. Smith*, 540 A.2d 246, 258 (Pa. 1988)). Furthermore, as this Court stated in *Commonwealth v. Handfield*, 34 A.3d 187 (Pa. Super. 2011), "[our] Supreme Court allows prior consistent statements to be proved by the person to whom they were made in order to support the credibility of the witness." *Id.* at 209 (citing *Commonwealth v. Hutchinson*, 556 A.2d 370, 372 (Pa. 1989)). Accordingly, the trial court did not abuse its

discretion by permitting the testimony of V.T.'s prior consistent statements made to L.S. and Boyll.

Sullivan further argues that V.T. made these statements to L.S. and Boyll after she had a motive to fabricate. Sullivan's Brief at 33. According to Sullivan, "V.T.'s motive to fabricate arose in 2007 or 2008 when Sullivan became strict with her and subsequently threw her out of the house and changed the locks." *Id*.; *see also* N.T., 5/3/12, at 32-36; N.T., 5/2/12, at 96-102. The trial court found that although Sullivan might be correct in his assertion that V.T.'s statements to L.S. and Boyll "arose after the motive to fabricate," his objection to this was "too late" because he failed to object to the prior consistent statements when V.T. offered them during direct examination, and only objected to the subsequent testimony by L.S. and Boyll. Trial Court Opinion, 8/23/13, at 10-11. The trial court determined that precluding testimony from these witnesses may have resulted in the jury drawing an adverse inference from the absence of their testimony corroborating V.T.'s account. *Id.* Thus, in fairness to the Commonwealth, the trial court permitted L.S. and Boyll to corroborate V.T.'s testimony of the conversations she had with them. *Id.*

After a review of the record, we disagree with the trial court's conclusion that Sullivan's objection was untimely. The record reflects that prior to any testimony on the third day of trial, defense counsel argued that L.S. and Boyll's testimony regarding V.T.'s disclosures of abuse was

inadmissible. ***See*** N.T., 5/2/12, at 3-23. Defense counsel conceded to allowing the Commonwealth to introduce evidence that V.T. disclosed abuse to others through V.T.'s testimony, but argued that the witnesses to whom V.T. disclosed the abuse, L.S. and Boyll, were precluded from testifying to what V.T. disclosed. ***Id.*** at 8-14. The trial court ruled that V.T., L.S., and Boyll were permitted to testify to the disclosures V.T. made in 2009. ***Id.*** at 19. The court declined to make a ruling on whether it would give the jury a prompt complaint instruction until the trial court heard the testimony and "[saw] how it play[ed] out." ***Id.*** at 20. The following discussion ensued:

> MR. LEVANT: Your honor, note my objection properly. To make sure my record is clear, I objected to her [(L.S.)] being called for any of those purposes.
>
> Now that the [c]ourt has made a ruling that she will be permitted to testify for the reasons stated, I feel that I then am put in a position where I have to fully cross-examine and assume all this is going to come in. So I would like to make the record clear on that, that my objection will be that she not be permitted to do any of that. Based upon the [c]ourt's ruling, I just want to be clear.
>
> THE COURT: Absolutely preserved for appeal and you can go at it.

N.T., 5/2/12, at 21.

During trial, defense counsel did not cross-examine V.T. or object to V.T.'s testimony regarding her prior consistent statements to L.S. and Boyll. N.T., 5/2/12, at 79, 83. At the conclusion of V.T.'s testimony, defense

counsel again objected to the introduction of L.S.'s testimony regarding V.T.'s prior consistent statements.  ***Id.*** at 168-81.

"Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  Pa.R.E. 103(b).  Here, Sullivan's attorney made a specific objection on the record to the trial court's ruling, which clearly and definitively allowed L.S. and Boyll to testify to V.T.'s prior consistent statements to them, leaving only the issue of whether the court would also classify the statements as prompt complaint for trial.  N.T., 5/2/12, at 19-20.  As Sullivan properly objected to the ruling, he was not required to renew the objection at trial.

We conclude, however, that the trial court properly permitted L.S. and Boyll to testify regarding the prior consistent statements.  Although Sullivan is correct that "[a] prior consistent statement is admissible only if it is made before the declarant has a motive to fabricate," ***Handfield***, 34 A.3d at 208, the record reflects that Sullivan failed to establish that V.T. had a motive to fabricate at the time she made the disclosures in question.

During opening statements, defense counsel suggested that V.T. lied about the sexual abuse allegations because she did not like how strict Sullivan was and she did not want to follow Sullivan's rules.  N.T., 4/30/12, at 37-38.  Furthermore, defense counsel elicited testimony on direct examination from his defense witness that V.T. and Sullivan had a "falling-

out" in 2007 because Sullivan accused her of stealing money from his room. N.T., 5/3/12, at 34-35, 47. The witness further testified that as a result of this incident, V.T. moved out of the house and Sullivan changed the locks. *Id.* at 35, 47. Sullivan asserts that V.T.'s motive to fabricate arose in 2007 or 2008 following these incidents. Sullivan's Brief at 33.

In *Commonwealth v. Montalvo*, 986 A.2d 84 (Pa. 2009), our Supreme Court stated that "[w]hen considering the admissibility of prior statements, the importance of timing has often been emphasized." *Id.* at 96. In support of this assertion, the Court cited to Pa.R.E. 613(c) comment, which provides, "the use of the consistent statement will depend upon the nature of the explanation and all of the circumstances that prompted the making of the consistent statement; the timing of that statement, although not conclusive, is one of the factors to be considered." *Id.* (citing Pa.R.E. 613(c), comment).

At trial, V.T. testified regarding the circumstances that prompted her to disclose Sullivan's abuse to L.S. and Boyll. V.T. stated that she told L.S. about the abuse after she moved out of Sullivan's home because she knew that L.S. was starting to go to Sullivan's apartment more often and she did not want Sullivan to do the same thing to L.S. that he had done to her. N.T., 5/2/12, at 79. V.T. similarly testified that she decided to contact DHS because she became concerned about her younger sisters that were living with Sullivan. *Id.* at 81-82, 159.

Although there was no dispute that V.T. made the consistent statement to Boyll in 2009, the parties did not agree upon the timing of V.T.'s statements to L.S. Defense counsel stated that V.T. informed L.S. of the abuse at least three years after the abuse occurred. N.T., 5/2/12, at 4, 6-7. On the other hand, the Commonwealth asserted that L.S. received a progression of information, with V.T. giving hints and alluding to the abuse as it was occurring. *Id.* at 4. The parties agreed that full disclosure occurred in 2009 when DHS became involved, which was approximately two-and-a-half years after V.T. left Sullivan's home. *Id.* at 5-7.

Sullivan argues that a motive to fabricate the abuse arose from V.T.'s unhappiness with his rules and strictness when she resided with him, as well as from the incident wherein Sullivan accused her of stealing money from his room, which occurred in 2007-2008. Sullivan's Brief at 33. However, Sullivan fails to establish the connection between these matters and an alleged motive to fabricate. The disclosures occurred more than three years after V.T. moved out of Sullivan's home and one to two years after Sullivan and V.T. allegedly had a falling out over stolen money. N.T., 5/2/12, at 5-7. V.T. no longer lived with Sullivan, was no longer under the control of or the rules of Sullivan, and there was no evidence suggesting that further issues between Sullivan and V.T. arose after Sullivan accused her of stealing money and changed the locks. *Id.* at 74-75. V.T. testified that she stopped speaking with Sullivan after she moved out, and only spoke with him again

when she was 18 years old. *Id.* at 97-101. Thus, there is no support in the record for Sullivan's claim that V.T. made the aforementioned disclosures to L.S. and Boyll because of Sullivan's strict discipline as opposed to her stated concern for her sisters and her hope of shielding them from the same sexual abuse she suffered at Sullivan's hands. Therefore, without more, we conclude that Sullivan did not show that V.T.'s disclosures post-dated a motive to fabricate the allegations because there was no temporal connection between the motive and the disclosure. As a result, we discern no error in the admission of the prior consistent statements.

In his third issue on appeal, Sullivan argues that the trial court abused its discretion in denying his motion for a mistrial based on Boyll's testimony regarding her attempts to contact Sullivan prior to his arrest. We begin by stating our standard of review:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Akbar*, 91 A.3d 227, 236 (Pa. Super. 2014) (citing *Commonwealth v. Tejada*, 834 A.2d 619, 623 (Pa. Super. 2003)).

Sullivan claims that the trial court's admission of Boyll's testimony that she attempted to contact him by telephone and by leaving a notification letter at his apartment violated his constitutional right to remain silent pursuant to the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Sullivan's Brief at 34. Sullivan specifically challenges the following portion of Boyll's testimony:

> Q. Prior to -- specifically calling your attention to December 9th of 2009, did you, yourself, make attempts to contact the defendant, Anthony Sullivan?
>
> A. Yes.
>
> Q. How did you make those attempts to contact him?
>
> A. I went to his home. I called the phone number that we had for him. I couldn't get any answer at the apartment building, and I couldn't get any answer -- the phone was no longer a working number.
>
> Q. Were there any letters or notes left in order to indicate that you wished to speak with him?
>
> A. Yes. We left a notification letter, which is standard.
>
> Q. Was this notification left approximately a month before you actually entered his home with the SWAT Team?
>
> A. Yes.

N.T., 5/2/2012, at 201-202. Although Sullivan agrees that "[t]he fact that Sullivan's phone line was disconnected or that he was not home when Boyll went to the house do[es] not implicate his right to remain silent[,]" he

- 30 -

argues that "the Commonwealth specifically made his silence an issue" by asking whether Boyll left any letters or notes indicating that she wished to speak with him. Sullivan's Brief at 36.

The trial court found that Boyll's testimony did not implicate Sullivan's right to remain silent. Trial Court Opinion, 8/23/13, at 6. In support of its conclusion, the trial court noted that the record was devoid of evidence that Sullivan either communicated with DHS or refused to communicate with DHS and that Boyll "never testified that the notification letter reached [Sullivan], nor that it requested or required a response." *Id.* Moreover, the trial court "gave the jury the standard instruction regarding [Sullivan's] right to remain silent and instructed the jury that no inference can be drawn from such silence." *Id.* The trial court also determined that to the extent it erred in permitting Boyll's testimony regarding the notification letter, the error was harmless. *Id.* at 6-7.

In his brief, Sullivan cites to **Commonwealth v. Molina**, 33 A.3d 51 (Pa. Super. 2012) (*en banc*), *appeal granted*, 51 A.3d 181 (Pa. Aug. 14, 2012), in support of his argument that the trial court erred in denying his motion for a mistrial. In **Molina**, the defendant was charged with one count of criminal homicide for beating the victim to death. At trial, a detective testified that while investigating the disappearance of the victim, she received information that Molina was potentially involved in her disappearance. When the detective went to Molina's house, an individual at

the house told the detective that Molina no longer lived there. The detective left a message with the individual, asking Molina to call her. *Id.* at 53-54. Molina called the detective that day and "told her that he did not know where [the victim] was but it was 'out on the street' that he was somehow involved in her being missing and that was not true." *Id.* at 54. Molina initially stated that he had not seen the victim for a year and a half, but moments later, stated that it had been three months. *Id.* When the detective asked Molina to come to the police station for an interview, Molina refused. *Id.*

During the Commonwealth's closing argument, Counsel commented on Molina's refusal to come to the police station for an interview. *Id.* Counsel for Molina objected to the Commonwealth's commentary, but the trial court overruled the objection and refused defense counsel's request for a curative instruction. *Id.* When the Commonwealth resumed, the prosecutor argued to the jury: "Factor [Molina's refusal to speak with police] in when you're making an important decision in this case as well." *Id.*

On appeal, an *en banc* panel agreed with Molina that the trial court erred in overruling his objection to the Commonwealth's use of his refusal to participate in an interview in its closing argument. We held that "the Commonwealth cannot use a non-testifying defendant's pre-arrest silence to support its contention that the defendant is guilty of the crime charged as

- 32 -

such use infringes on a defendant's right to be free from self-incrimination." *Id*. at 62 (citations omitted).

After a review of the record, we conclude that the case presently before this Court is distinguishable from *Molina*. Unlike *Molina*, neither the Commonwealth nor Boyll herself implied that Sullivan's silence constituted an admission of guilt. In fact, the record establishes that Boyll never testified that Sullivan received the letter. Moreover, unlike the prosecution in *Molina*, the Commonwealth in this case did not address Boyll's attempts to contact Sullivan prior to his arrest during trial or in its closing argument.

We clarified in *Molina* that while the Commonwealth cannot use a non-testifying defendant's pre-arrest silence as substantive evidence of guilt, "our finding does not impose a *prima facie* bar against any mention of a defendant's silence." *Id*. at 63. Thus, "the mere revelation of a defendant's pre-arrest silence does not establish innate prejudice [where] it was not used in any fashion that was likely to burden defendant's Fifth Amendment right or to create [an] inference of admission of guilt." *Commonwealth v. Guess*, 53 A.3d 895, 903 (Pa. Super. 2012) (citations omitted); *see also Commonwealth v. Whitney*, 708 A.2d 471, 478 (Pa. 1998) ("[e]ven an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt").

In this case, Boyll's testimony did not raise an impermissible inference of guilt or violate Sullivan's constitutional rights. At most, this case involved a mere revelation of Sullivan's pre-arrest silence. *See Guess*, 53 A.3d at 903. Accordingly, we conclude that the trial court did not abuse its discretion in denying his motion for a mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014