708 A.2d 471

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Raymond WHITNEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 12, 1996.

Decided Feb. 26, 1998.

Reargument Denied May 7, 1998.

Mitchell Scott Strutin, Philadelphia, for R. Whitney.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for the Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION OF THE COURT*

FLAHERTY, Chief Justice.

This is an appeal from the order of the Court of Common Pleas of Philadelphia County denying the motion of appellant, Raymond Whitney, for post-conviction relief following his con-

viction of, among other things, first degree murder and the imposition of the death sentence.

The circumstances surrounding the criminal episode were stated in *Commonwealth v. Whitney*, 511 Pa. 232, 236–37, 512 A.2d 1152, 1154–55 (1986) as follows:

[S]hortly before 4:00 A.M. on October 10, 1981, a man gained access to the second floor apartment of Juliana Minor through a window. The man, identified later that night by Ms. Minor as appellant, came into her bedroom where she lay in bed. Armed with a knife, he threatened to kill her if she wasn't quiet. He asked if she recognized him; she responded that she didn't. He then announced that he was in the "wrong" apartment. Nonetheless, he stole items from her jewelry box, cut her telephone wire, and soon thereafter left through a window onto a ledge.

Moments later appellant entered the apartment of Jehad Taha and Mahin Murtaza, husband and wife, just two doors away from Ms. Minor's apartment on the same floor. Realizing that someone was in the apartment, Mr. Taha got out of bed and went to the living room to investigate. Mrs. Murtaza heard someone hit her husband and she attempted to contact the police on the bedroom phone. Before she was able to get through she saw her husband at the bedroom door, blood running from his chest and face, with appellant standing behind him holding a knife to his neck. As Mrs. Murtaza hung up the phone appellant threw Mr. Taha to the bed and approached Mrs. Murtaza, holding his knife to her chest. Appellant demanded money and jewelry. She gave him jewelry from a candle case; appellant forcibly removed what jewelry the victims were wearing. He then announced his desire to rape Mrs. Murtaza and tore off her brassiere. Before carrying these intentions further he repeated his demand for money, and was told by Mrs. Murtaza that their money was in the living room in her purse. Appellant ordered Mr. Taha up from the bed and pushed him toward the living room. Still bleeding Mr. Taha headed for the bathroom, at which point appellant attacked and stabbed him again. Appellant forced Mr. Taha into the living room

where Mrs. Murtaza emptied the small amount of change in her purse onto the floor. Appellant expressed his disappointment. In a relaxed and "very cool" manner he opened the refrigerator, took out a glass container and drank some water. Then he advanced on Mrs. Murtaza, hugged her, touched her breast and reiterated his intent to have intercourse with her. He struck her and threw her to the floor next to her husband. Mr. Taha protested, but was struck in the face and ordered to put his neck down. Appellant then stabbed him again and repeatedly stated that he was going to kill Mr. Taha and then would rape her. At this point appellant opened his pants and drew out his penis. Mr. Taha arose and began to scuffle with appellant; Mrs. Murtaza ran out of the apartment and onto the street where she saw two police officers, Sergeant Wagner and Officer Miller. She directed them to the apartment where the police officers observed appellant crouched over Mr. Taha pulling a knife out of Taha's chest. Appellant was immediately arrested. Mr. Taha died subsequently as a result of twenty-eight stab wounds to his body.

Appellant was convicted by a jury of two counts of burglary, two counts of robbery, two counts of possession of an instrument of crime, terroristic threats, indecent assault, attempted rape, and murder in the first degree. *Whitney*, 511 Pa. at 235, 512 A.2d at 1153–54. Following a sentencing hearing, the jury rendered a verdict of death finding that the aggravating circumstances [1] outweighed the mitigating ones.[2] *Id.* at 248–50, 512 A.2d at 1161. Post-verdict motions were denied and appellant was formally sentenced to death. *Id.* at 235, 512

---

**1.** The jury found three aggravating circumstances: the defendant committed the killing while in the perpetration of a felony; in the commission of the offense, he knowingly created a grave risk of death to another person in addition to the victim; and, the offense was committed by means of torture. 42 Pa.C.S. § 9711(d)(6), (7) and (8).

**2.** The sentencing jury found one mitigating circumstance: other evidence of mitigation concerning the character and record of the defendant and the circumstances of the case. 42 Pa.C.S. § 9711(e)(8). The jury rejected evidence that appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. 42 Pa.C.S. § 9711(e)(3).

A.2d at 1154. On direct appeal, this court affirmed both the conviction and the sentence. *Id.* at 251, 512 A.2d at 1162 (1986).

Appellant filed a pro se petition in 1990 seeking post-conviction relief. The PCRA court stayed appellant's warrant of execution pending disposition of the petition and appointed counsel. Following an evidentiary hearing, post-conviction relief was denied. This appeal followed.

Appellant must demonstrate eligibility for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9543. The following deals with the PCRA as it existed in early 1995, the time frame of appellant's PCRA filings and the lower court's decision.[3] Sections 9543(a)(2) and (3) required, in relevant part, the following:

(a) General rule.—To be eligible for relief under this sub-chapter, a person must plead and prove by a preponderance of the evidence all of the following:

. . .

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

. . .

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

3. 42 Pa.C.S. §§ 9543 and 9544 are stated above as they existed at the time of appellant's PCRA filings, which occurred before the November 17, 1995 amendment to the PCRA.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

42 Pa.C.S. §§ 9543(a)(2) and (3) (1988).

The first inquiry here is whether an allegation of error has been previously litigated. The term "previously litigated" means that the highest appellate court wherein the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544. *See, Commonwealth v. Szuchon,* 548 Pa. 37, 41–43, 693 A.2d 959, 961 (1997), *cert. denied* 517 U.S. 1212, 118 S.Ct. 224, 139 L.Ed.2d 157 (1997); *Commonwealth v. Crawley,* 541 Pa. 408, 413, 663 A.2d 676, 678 (1995), *cert. denied,* 517 U.S. 1212, 116 S.Ct. 1832, 134 L.Ed.2d 936 (1996); *Commonwealth v. Beasley,* 544 Pa. 554, 563–64, 678 A.2d 773, 777 (1996), *cert. denied* — U.S. —, 117 S.Ct. 1257, 137 L.Ed.2d 337 (1997).

The next inquiry is whether the allegation of error has been waived. An issue has been waived where the petitioner fails to raise it when it could have been raised at trial or on appeal, 42 Pa.C.S. § 9544(b), and an anti-waiver rule does not apply, 42 Pa.C.S. §§ 9543(a)(3)(ii) or (iii). *See Commonwealth v. Peterkin,* 538 Pa. 455, 463, 649 A.2d 121, 125 (1994), *cert. denied* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995); *Beasley,* 544 Pa. at 564, 678 A.2d at 777, *cert. denied* — U.S. —, 117 S.Ct. 1257, 137 L.Ed.2d 337 (1997). Waiver is excused under 42 Pa.C.S. § 9543(a)(3)(ii) or (iii) where the alleged error in the main case resulted in the conviction or affirmance of sentence of an innocent individual or from ineffective assistance of counsel at a point in the proceedings where defendant had a constitutional right to counsel, i.e., through direct appeal, provided the standards announced in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987),

and its progeny are met. *Beasley*, 544 Pa. at 565, 678 A.2d at 778.[4]

*Pierce* and subsequent cases require a defendant to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel's performance was unreasonable; and (3) counsel's ineffectiveness prejudiced defendant. An appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. *Peterkin*, 538 Pa. at 460–61, 649 A.2d at 123. Further, counsel cannot be considered ineffective for failing to assert a meritless claim and is presumed to have been effective. *Id; Crawley*, 541 Pa. at 414, 663 A.2d at 679. Also, appellant bears the burden of proving all three prongs of the *Pierce* standard. *Commonwealth v. Baker*, 531 Pa. 541, 562, 614 A.2d 663, 673 (1992).

Finally, assuming the above is met, defendant is then required by 42 Pa.C.S. § 9543(a)(2) to demonstrate eligibility for relief under the PCRA. An alleged violation of the state or federal constitution or ineffective assistance of counsel is not cognizable under the PCRA unless the violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i) and (ii). *Commonwealth v. Buehl*, 540 Pa. 493, 505, 658 A.2d 771, 777 (1995); *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, *cert. denied*, 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995); *Peterkin*, 538 Pa. at 460–61, 649 A.2d at 123.

In summary, appellant must demonstrate a number of things. First, he must demonstrate that the claim has not been previously litigated and has not been waived. If the claim has been waived, appellant must demonstrate the waiver was the result of ineffective assistance of counsel at some point through the direct appeal. If such demonstration is met, then appellant must demonstrate that the ineffective assis-

---

4. This does not address rights to counsel at a collateral stage where such rights may be provided by statute as opposed to the constitution.

tance of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."[5]

Appellant first argues that he is entitled to a new trial or a new penalty hearing because trial counsel provided ineffective assistance by failing to advise appellant of his right to testify, or to call him to testify, at trial or at the penalty phase. The decision whether to testify is ultimately to be made by the accused after consultation with counsel. *Commonwealth v. Rawles*, 501 Pa. 514, 525 n. 3, 462 A.2d 619, 624 n. 3 (1983). Trial counsel is not ineffective for failing to inform defendant of his right to testify where the defendant admitted that the trial court had so informed him. *Commonwealth v. DeHart*, 539 Pa. 5, 14–15, 650 A.2d 38, 42–43 (1994). Where the credibility determination of the post-conviction court is supported by the record, the reviewing court is to defer to that determination. *Commonwealth v. Garrity*, 509 Pa. 46, 55–56, 500 A.2d 1106, 1111 (1985). Counsel is not ineffective where counsel's decision to not call defendant was reasonable, e.g., where defendant could be impeached with his prior record of offenses *crimen falsi*. *Commonwealth v. Holloway*, 524 Pa. 342, 350–51, 572 A.2d 687, 692 (1990).

The record reflects that appellant was advised he had a right to testify. While appellant claims he did not know he had a right to testify or did not discuss testifying with counsel, he admitted that the trial judge had advised him of his right to testify. The PCRA court did not believe appellant's claims,

5. In *Buehl, supra,* Mr. Justice Cappy, in a dissenting opinion joined by this author, expressed the view that although the PCRA adds that the alleged ineffectiveness of counsel must meet this statutory standard, this statutory provision does not impose requirements additional to those stated above, for to hold otherwise would violate the Sixth Amendment's guarantee of effective assistance of counsel. *Buehl,* 540 Pa. at 516, 658 A.2d at 783 (Cappy, J., dissenting). *See also, Commonwealth v. Lark,* 548 Pa. 441, 698 A.2d 43 (1997). We need not address the correctness of the view expressed in *Buehl* for all of the claims presented by appellant fail because there is no merit to the underlying claim, there was a reasonable basis for counsel's conduct or there is no reasonable probability the outcome of the trial would have been different but for counsel's act or omission.

noting that he was "evasive" when examined about his prior contacts with his counsel. Here, appellant fails to demonstrate that he did not know he had a right to testify, particularly since appellant admitted that he had been informed by the trial court of his right to testify and since the PCRA court did not otherwise believe appellant.

Appellant also contends that counsel was ineffective for failing to call him at trial to testify about his intoxicated condition on the night of the murder. Had appellant taken the stand, he could have been impeached with his record of theft and criminal trespass convictions and with his prior statements at the time of his arrest that he "had a little to drink." Also, his testimony was cumulative of other defense witnesses regarding his claimed intoxication.[6] Appellant has not demonstrated that counsel's action was unreasonable or that the absence of his testimony prejudiced him at trial.

Appellant next argues that counsel was ineffective for failing to call him at the penalty phase to testify about his purported physical abuse as a child. Counsel is not ineffective for failing to call at the penalty phase witnesses who give cumulative mitigating evidence. *Commonwealth v. Frey,* 520 Pa. 338, 349–50, 554 A.2d 27, 32–33 (1989), *cert. denied* 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990). The PCRA court found that had appellant taken the stand, he would have discredited the testimony of the defense witness, Dr. Gerald Cooke, that appellant had feelings of guilt over his behavior. Also, since Dr. Cooke had already testified about appellant's "bad and tough childhood," appellant's testimony about childhood physical abuse would have been cumulative to the testimony of Dr. Cooke. Here, appellant fails to demonstrate that counsel's actions were unreasonable where appellant's demeanor and testimony could have prejudiced the jury by

6. Appellant inappropriately cites *Commonwealth v. Neal,* 421 Pa.Super. 478, 618 A.2d 438 (1992) as support. In *Neal,* counsel had no reasonable basis for failing to put defendant on the stand where the defendant had no criminal record for impeachment purposes and the outcome of the case was a function of the testimony of the victim which only the defendant could rebut. *Id.* at 483, 618 A.2d at 441. Here, appellant had a criminal record and this testimony was cumulative.

making him appear remorseless or was cumulative. We are mindful that, following appellant's testimony at the PCRA hearing, the PCRA court found appellant to be "completely without remorse for either his drinking or the terrible crimes which he, beyond any doubt, committed." Further, appellant has failed to demonstrate that the absence of his testimony prejudiced him at the penalty phase. Appellant's claim fails.

Appellant's second contention is that trial counsel provided ineffective assistance by failing to comply with his purported "intention" to be tried by a judge and not a jury. While a defendant has a constitutional right to a trial by jury, he has no such right to a bench trial. *Commonwealth v. Miller*, 541 Pa. 531, 552–53, 664 A.2d 1310, 1320–21 (1995), *cert. denied*, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). The record reflects that the trial court examined appellant regarding his wish to be tried by a jury and appellant unequivocally stated that he wanted a jury trial. Again, the PCRA court found appellant "evasive" when questioned as to whether he discussed this issue with counsel. Appellant has failed to demonstrate either unreasonable error or prejudice to the truth-determining process.

Appellant's third contention is that counsel was ineffective for failing to call Dr. Cooke to support a claim of diminished capacity. Appellant argues that Dr. Cooke could have testified regarding the effect of alcohol and drugs on appellant's mental state. When a defendant claims that expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence. *Commonwealth v. Williams*, 537 Pa. 1, 29, 640 A.2d 1251, 1265 (1994). Missing witnesses must be called at the evidentiary hearing to demonstrate their alleged usefulness at the trial. *Commonwealth v. Anderson*, 501 Pa. 275, 287–88, 461 A.2d 208, 214 (1983). Also, counsel is not ineffective for failing to present expert medical testimony concerning the impact of defendant's alcoholism on his mental capacity where no medical witness offered testimony favorable to the defense of

diminished capacity. *Commonwealth v. Nelson,* 514 Pa. 262, 271–72, 523 A.2d 728, 735 (1987), *cert. denied* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987).[7]

Here, the record reflects that Dr. Cooke, at trial counsel's request, evaluated defendant and determined, as demonstrated in his written report to trial counsel, that defendant failed to meet the criteria for diminished capacity. Trial counsel, therefore, reasonably decided not to call Dr. Cooke at the guilt phase where his testimony would have significantly weakened appellant's diminished capacity defense.[8] Further, appellant did not call Dr. Cooke at the PCRA hearing as a witness to support his claim. Appellant has failed to meet his burden.

 Appellant next contends that trial counsel should have objected when Sergeant Robert Wagner testified that appellant maintained silence at the time of his arrest. Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt. *Commonwealth v. Crews,* 536 Pa. 508, 526–30, 640 A.2d 395, 404–06 (1994). For strategic reasons, counsel may decide that a defendant's right to remain silent "is best served" by not "drawing attention to defendant's failure to testify." *Commonwealth v. Lewis,* 528 Pa. 440, 455 n. 14, 598 A.2d 975, 983 n. 14 (1991) (trial counsel's failure to request a "no-adverse-inference" charge was reasonable in the circumstances).

7. Appellant erroneously argues that *Commonwealth v. Potts,* 486 Pa. 509, 406 A.2d 1007 (1979) supports his argument. In *Potts,* defendant shot his wife in a jealous rage after heavily drinking alcoholic beverages at various bars. Defendant was examined by various psychiatrists and psychologists between his arrest and his trial; however, his counsel failed to present this testimony at trial. This court ruled that trial counsel was ineffective for failing to present available psychiatric or psychological testimony that could have been favorable to defendant's defense.

8. The record reflects that Dr. Cooke was called as a witness at the suppression hearing to testify that appellant was unable to comprehend his *Miranda* rights and at the penalty phase on the effect of the use of drugs and alcohol on intellectual functioning. Clearly, the purpose of Dr. Cooke's testimony on these two occasions was not the purpose for the guilt phase testimony.

The record reflects that after Sergeant Wagner and Officer Miller observed appellant pulling a knife out of the victim, Wagner ordered appellant against the wall. While Sergeant Wagner testified appellant said nothing when placed against the wall, Officer Miller testified that appellant told the officers that his name was "Raymond Long." Thus, Sergeant Wagner's account was inconsistent with Officer Miller's account. It was also inconsistent with Sergeant Wagner's prior testimony that appellant had complained of back pain. By not objecting, trial counsel was able to cross-examine Sergeant Wagner on the inconsistencies.

Here, the record reflects counsel's reasonable trial strategy both to cross-examine Sergeant Wagner and to avoid highlighting appellant's failure to communicate at the time of his arrest. Appellant, who did not call trial counsel at the post-conviction evidentiary hearing, failed to demonstrate otherwise. Further, appellant has failed to show how the outcome of the proceedings would have been different in light of the testimony of the two living witnesses and the officers themselves, and the evidence of the deceased victim's blood on appellant and the victims' stolen items on appellant's person. Appellant has failed to show that the challenged testimony equated his post-arrest silence with guilt[9] and, therefore, that error or prejudice exists.

Appellant next contends that trial counsel was ineffective at the penalty phase for failing to present evidence of an absence of a significant history of criminal convictions. The Commonwealth is entitled to rebut a claim of mitigating circumstance of no significant history of criminal convictions with evidence of adjudications of delinquency. *Commonwealth v. Speight,* 544 Pa. 451, 464–65, 677 A.2d 317, 325 (1996); *cert. denied* —— U.S. ——, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997); *Commonwealth v. Stokes,* 532 Pa. 242, 261–62, 615 A.2d 704, 714 (1992) (plurality). The record reflects that at the time of trial, appellant had adult convictions for theft by unlawful taking and criminal trespass and fourteen adjudica-

9. The record reflects that appellant later gave an inculpatory statement to the police.

tions of delinquency for crimes including burglary, conspiracy, assault and battery, larceny, receiving stolen goods and trespassing.

Appellant argues that because his (adult) record reveals an absence of any conviction involving the use or threat of violence, counsel should have presented this mitigating circumstance. Had counsel presented the mitigating circumstance, such presentation would have permitted the admission of appellant's prior adult convictions and fourteen juvenile adjudications and, therefore, probably negated the mitigating circumstance and harming the defense. On review of the record, appellant has failed to demonstrate error or prejudice.

Appellant's sixth contention is that trial counsel was ineffective at the penalty phase for failing to present evidence of appellant's age of twenty-two years at the time of the murder as a mitigating circumstance, 42 Pa.C.S. § 9711(e)(4). Counsel is not ineffective for failing to present mitigating evidence of age where defendant's youthfulness is apparent to the jury. *Commonwealth v. Jones,* 530 Pa. 591, 625, 610 A.2d 931, 947 (1992). The age of eighteen years and four months is not a *per se* mitigating circumstance. *Id. See also, Commonwealth v. Henry,* 524 Pa. 135, 155–56, 569 A.2d 929, 939 (1990), *cert. denied,* 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991) (age of twenty years did not establish that appellant was so young and immature that the jury erred in finding that age was not a mitigating factor).

The record reflects that the trial court instructed on age and that age was referenced following the testimony of Dr. Cooke. Trial counsel presented Dr. Cooke who claimed that appellant's mental deficiency, "organic brain damage," dyssocial environment, difficult childhood, and alcohol and drug use made it difficult for appellant to control his behavior but that, over time and with age, appellant's behavior might be significantly modified with therapy. The court instructed the jury that appellant's age was in issue as a possible mitigating circumstance and the jury was free to find age as a mitigating factor. Here, since age is not a *per se* mitigating circumstance

and since appellant has failed to show why counsel was compelled otherwise to bring age to the attention of the jury, appellant has failed to demonstrate error or that the result likely would have been different.

Appellant's seventh contention is that trial counsel was ineffective at the penalty phase for failing to object to the jury instructions and the verdict slip because they violated *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). He argues that, as required by *Mills,* the jury was not informed that it could find mitigating circumstances without unanimity. His argument fails for two reasons: *Mills* is not retroactive to his case; and, even if *Mills* was retroactive, no error is shown under *Mills.*

First, *Mills* is not retroactive to appellant's case. *Mills* was decided in 1988, six years after appellant's trial and two years after the conclusion of his direct appeal. *Mills* is not retroactive to a case where defendant's direct appeal was concluded before *Mills* was announced. *Peterkin,* 538 Pa. at 465 n. 4, 649 A.2d at 126 n. 4 (1994). Counsel cannot be ineffective for failing to predict changes in the law and raise objections on legal grounds that were not approved by an appellate court until after the time of the trial even where some basis may then have existed for advancing the claim. *Beasley,* 544 Pa. at 568, 678 A.2d at 779; *Christy,* 540 Pa. at 217, 656 A.2d at 889. Here, counsel is not ineffective for failing to predict that *Mills* would be announced six years later. And, in any event, *Mills* is not retroactive because appellant's direct appeal had concluded when *Mills* was announced.

Further, appellant has failed to demonstrate error under *Mills.* In *Commonwealth v. Hackett,* 534 Pa. 210, 222–23, 627 A.2d 719, 725 (1993), we explained *Mills:*

> *Mills* concerned a Maryland statute which required jurors unanimously to agree on each individual mitigating circumstance after deciding aggravating factors. Absent unanimous agreement, the Maryland statute barred consideration of the mitigating evidence as to a given circumstance. The

Supreme Court held that the statute violated the Eighth Amendment because a single Maryland juror could force a death verdict on the other jurors by refusing to agree that mitigation existed.

The Pennsylvania statute, 42 Pa.C.S. § 9711, does the opposite and, therefore, does not violate the rule in *Mills*. The Pennsylvania statute, 42 Pa.C.S. § 9711(c)(1)(iv), requires that the jury unanimously agree that *no* mitigating circumstances exist and unanimously agree on a verdict for a sentence of death. Thus, while a single Pennsylvania juror can always *prevent* a death sentence, a single juror can never *compel* one, as could a single juror under the former Maryland statute. Jury instructions in the penalty phase which follow the language of the death penalty statute do not recreate the error in *Mills*.

Here, the record reflects that the trial court's instructions and the verdict slip followed the death penalty statute, 42 Pa.C.S. § 9711. No error has been demonstrated.

■ Appellant's eighth contention is that trial counsel was ineffective for failing to object to the penalty-phase instructions respecting the absence of a definition of the term "torture." Appellant argues that under *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987), *cert. denied*, 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987), counsel should have requested that the court define the term "torture." *Nelson* was decided after appellant's direct appeal was final and, thus, is not applicable to appellant's case because *Nelson* is not retroactive to cases for which direct appeal has concluded. *See Commonwealth v. Fahy*, 537 Pa. 533, 539 n. 8, 645 A.2d 199, 201 n. 8 (1994), *cert. denied* 513 U.S. 1086, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995). Since counsel is not ineffective for failing to predict changes in the law and *Nelson* is not retroactive in appellant's case, no error is demonstrated for no controlling law would have supported appellant's claim or warranted relief.

■ Also, as in *Fahy*, the record reflects that, on direct appeal, this court determined that the evidence was sufficient

to support a finding of torture. Torture is the intentional infliction of a considerable amount of pain and suffering on a victim which is unnecessarily heinous, atrocious or cruel manifesting exceptional depravity. *Commonwealth v. Edmiston,* 535 Pa. 210, 236, 634 A.2d 1078, 1091 (1993). *See also, Commonwealth v. Heidnik,* 526 Pa. 458, 587 A.2d 687 (1991). There must be an indication that the killer was not satisfied with the killing alone. *Edmiston, supra; Nelson,* 514 Pa. at 280, 523 A.2d at 737. Here, the direct appeal court found the evidence sufficient on the issue of torture.[10] This claim is meritless.

■■■ Appellant's final contention is that trial counsel failed to call appellant's aunt by marriage and cousin as witnesses in the penalty phase. He contends these family members would have presented additional evidence of the alcoholism of appellant's mother and her physical abuse of him in order to prove mitigation based on character and record. To prove that counsel was ineffective for not calling certain witnesses, defendant must establish the existence of and the availability of the witnesses, counsel's actual awareness, or duty to know, of the witnesses, the willingness and ability of the witnesses to cooperate and appear on the defendant's behalf and the necessity for the proposed testimony in order to avoid prejudice. *Commonwealth v. Wilson,* 543 Pa. 429, 439, 672 A.2d 293, 298 (1996), *cert. denied* —— U.S. ——, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996).

The PCRA court found no evidence that appellant had told trial counsel that these familial witnesses would testify that appellant's mother abused him. The record also reflects that appellant never told Dr. Cooke about the alleged abuse and that appellant testified at the post-conviction hearing that he never asked counsel to present his aunt and cousin as witnesses. Also, while the cousin never spoke to counsel or

10. The record reflects evidence that appellant stabbed the victim twenty-eight times during four separate attacks, during which time he threatened to rape the victim's wife after he killed the victim, and that twenty-six of the twenty-eight wounds were not lethal, evidencing that appellant was not satisfied with just killing Mr. Taha.

counsel's investigator, the aunt spoke to counsel's investigator but did not discuss alleged abuse by appellant's mother. Finally, appellant has failed to demonstrate prejudice. The penalty phase jury found the mitigating circumstance without the additional evidence that appellant claims counsel should have presented. Also, appellant has not demonstrated that the result would have been different had the testimony of these witnesses been presented or that the absence of the testimony of these witnesses so undermined the truth-determining process that no reliable adjudication of the penalty could have occurred. Appellant has demonstrated neither error nor prejudice and his claim is meritless.

The order of the Court of Common Pleas of Philadelphia County is affirmed.