J-S85011-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREE GAINES | : | |
| | : | |
| Appellant | : | No. 577 WDA 2017 |

Appeal from the PCRA Order March 15, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012297-2010

BEFORE: BOWES, J., PANELLA, J., and STABILE, J.

MEMORANDUM BY BOWES, J.: FILED MAY 14, 2018

Tyree Gaines appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

In its opinion, the PCRA court set forth the factual background of the case as follows:

> [T]he evidence presented at trial established that [A.H.] and her four (4)[-]year[-]old son, [K.], lived at 2340 East Hills Drive in the City of Pittsburgh. [A.H.'s] boyfriend . . . stayed at the house occasionally, but was known to keep drugs and money in the house.
>
> In the early morning hours of July 11, 2010, [Appellant], along with two other men, co-[d]efendants Amir Ferguson and Richard Woodward, broke into [A.H.'s] residence for the purpose of stealing the drugs and money they knew to be in the house. The three (3) men initially approached the front door and knocked, then left. [A.H.], who was at home watching movies with her friends and son, looked out of the peep-hole in the door and saw the men wearing black clothing and scarves over their faces. She called another friend, [T.J.], who had just left, and

asked him to look around the area. [T.J.] did not see anyone and returned to [A.H.'s] residence.

Approximately fifteen minutes later, the three men knocked again. This time [T.J.] looked out the peep-hole and after seeing the three (3) men, he instructed everyone to go upstairs and hide and to call the police. The group hid in [K.'s] room, some inside the closet and some behind the bed. [A.H.] was on the phone with 911 when the men broke the front door down and entered the house. The men searched the downstairs level of the home, but were unable to find the drugs and money. [Appellant] and Ferguson went upstairs and broke down the door of the bedroom where everyone was hiding. They demanded that [A.H.] tell them where the drugs and money were, and when she did not, they grabbed [K.], put [a] gun to his head and asked him where the items were. [K.] directed them to an air vent, where they found some money. They then let [K.] go, but put [a] gun to [A.H.'s] head and forced her to take them to the drugs. [A.H.] and the men went downstairs, when Woodward, who had been standing by the patio door with an assault rifle, yelled that the police had arrived. The men ran upstairs.

Shots were fired at the police from inside the house and the officers returned fire. [Appellant] ran back downstairs, where he was able to escape out the front door.

Downstairs, City of Pittsburgh Police Officer Steven Sywyj had entered the house in pursuit of the men. He encountered [A.H.] and told her to get out of the house. As she fled, she was [fatally wounded by] a bullet fired from the house. [T.J.] came out of the room in an attempt to find and aid [A.H.,] and was shot in the hand. Eventually, [Appellant] and Ferguson were able to escape the police, but were apprehended several days later.

Trial Court Opinion, 6/1/17, at 2-4.

The criminal cases against Appellant, Ferguson, and Woodward were consolidated for trial. Ultimately, a jury convicted Appellant of second-degree murder, robbery, and other related offenses. The trial court sentenced him to life in prison on the murder conviction, and no further

penalty for the remaining convictions. This Court affirmed Appellant's judgment of sentence on May 22, 2013, and our Supreme Court denied allowance of appeal on October 29, 2013. See Commonwealth v. Gaines, 81 A.3d 1002 (Pa.Super. 2013) (unpublished memorandum), appeal denied, 78 A.3d 1089 (Pa. 2013).

Appellant filed a timely pro se PCRA petition on October 27, 2014.[1] The PCRA court appointed counsel, who filed an amended petition. After issuing notice pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed the petition without a hearing. This timely appeal followed.

Appellant raises the following issues for our review:

1. Whether trial counsel gave ineffective assistance for failing to object that Appellant's right to a public trial pursuant to Pennsylvania and United States Constitutions was violated?

2. Whether trial counsel gave ineffective assistance of counsel for failing to object to Detective [Margaret] Sherwood's testimony that a videotape showed that an officer was telling Appellant to drop his gun?

3. Whether the trial counsel gave ineffective assistance for failing to object to Detective Sherwood's comment on Appellant's right to silence?

Appellant's brief at 4.

Our standard of review of an order dismissing a PCRA petition is well-

---

[1] Appellant sent a PCRA petition to the district attorney's office on September 22, 2014, but did not file the petition with the PCRA court. The document filed by Appellant on October 27, 2014, is entitled "Brief in Support of PCRA Petition."

settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is de novo and our scope of review plenary.

Commonwealth v. Ford, 44 A.3d 1190, 1194 (Pa.Super. 2012) (citations omitted).

Additionally, when a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

> To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must . . . demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to

> succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

Commonwealth v. Johnson, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). "If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." Commonwealth v. Travaglia, 661 A.2d 352, 357 (Pa. 1995) (citing Strickland v. Washington, 466 U.S. 668, 697 (1984)).

In his first issue, Appellant asserts that his trial counsel was ineffective because he failed to object when the trial court ordered that the courtroom doors be locked during the playing of his taped confession, and again when it recharged the jury as to second and third-degree murder. Appellant claims that the trial court's orders to lock the courtroom doors prevented members of the public from entering the courtroom, and therefore violated his right to a public trial, as guaranteed by the Fifth and Sixth Amendments to the United States Constitution, and Article I, Section 9 of the Pennsylvania Constitution. Appellant further claims because the trial court's orders constitute structural error, he need not demonstrate that he was prejudiced by his counsel's ineffectiveness.

A violation of the right to a public trial is a structural error.[2]  See Weaver v. Massachusetts, 137 S. Ct. 1899, 1908 (2017).  However, not every public trial violation will lead to a fundamentally unfair trial, and the failure to object to that violation does not always deprive the defendant of a reasonable probability of a different outcome.  Id. at 1911.  Thus, a defendant raising a public trial violation via an ineffective assistance claim must satisfy the prejudice prong of the ineffectiveness test by showing either a reasonable probability of a different outcome in the case, or that the particular violation was so serious as to render the trial fundamentally unfair.  Id.

Here, the PCRA court addressed Appellant first issue as follows:

As the record reflects, the audiotape of [Appellant's] confession began to play and this [c]ourt noticed it was difficult to hear, so it interrupted the playback and asked that the courtroom doors be locked to prevent distractions for the jury.  Similarly, it has been this [c]ourt's practice . . . for over 30 years to lock the courtroom doors during jury instructions to prevent spectator movement from distracting the jurors. . . . [T]he record reflects that in both the audiotape playback and re-charge situations, this [c]ourt did not ask any spectators to leave the courtroom before the doors were locked.  Rather, the record clearly reflects that this [c]ourt only locked the courtroom doors in certain limited situations where audio quality was poor and juror attention was paramount.

---

[2] Certain errors are deemed "structural," and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process.  On direct review, if an error is "structural," the government is not entitled to deprive the defendant of a new trial by showing that the error was harmless beyond a reasonable doubt.  Weaver, supra at 1911.

PCRA Court Opinion, 6/1/17, at 7.

Here, we are not persuaded that a public trial violation did, in fact, occur. See Commonwealth v. Hartman, 638 A.2d 968, 972 (Pa. 1994) (rejecting appellant's argument that the trial court's order to briefly lock the courtroom doors during the charge to the jury constituted a public trial violation, where all who were present were permitted to remain, and the closure was simply to ensure that the jury would not be distracted by the coming and going of courtroom spectators). However, even if we were to assume that a public trial violation did occur, Appellant has offered no evidence suggesting either a reasonable probability of a different outcome but for trial counsel's failure to object, or that counsel's alleged shortcomings led to a fundamentally unfair trial. The proceedings were not conducted in secret or in a remote place, and no member of the public was asked to leave the courtroom. This is not a situation where a potential juror during voir dire, or a witness on the stand, might have behaved differently had the public been present. Rather, the public was permitted to remain in the courtroom if they so desired. Moreover, the closure decision was made by the judge in an effort to prevent distraction and noise caused by people entering or leaving the courtroom, in order to ensure that the jurors could hear the audiotape and concentrate on the instructions provided during recharging. Thus, even assuming a public trial violation occurred, Appellant has failed to establish, by a preponderance of the evidence, that, in light of

his audiotaped confession to police and the surveillance videotape showing him fleeing from the scene with a firearm, the outcome of the proceedings would have been different had trial counsel objected to the trial court's orders to briefly lock the courtroom doors. Accordingly, his first issue lacks merit.

In his second issue, Appellant contends that trial counsel was ineffective for failing to object to Detective Sherwood's testimony that a silent surveillance videotape showed a police officer verbally telling Appellant to drop his gun. Appellant points to the following testimony during which Detective Sherwood, who had recovered the surveillance videotape, explains its contents to the jury:

> At 3:22:02 you'll see [Officers Nicholas] Papa and [Tim] Matson chasing after Ferguson, and then [Officer] Papa now turns around, and he's coming back, and at this point in this area he's telling [Appellant] to drop his weapon. He's running for cover or what cover he can get to the left, and he's ordering [Appellant] and engaging [Appellant].

Appellant's brief at 18 (emphasis in original) (quoting N.T. Trial, 8/29/11-9/2/11, at 500). Appellant claims that because Detective Sherwood was not present at the scene, and the videotape had no audio component, she was not permitted to testify regarding the officer's instructions to Appellant. Appellant baldly asserts that he suffered prejudice as a result of counsel's failure to object to the detective's testimony.

We cannot agree with Appellant's assertion. Here, Officer Papa testified at Appellant's trial prior to Detective Sherwood. During his

- 8 -

testimony, Officer Papa provided detailed testimony regarding his encounter with Appellant and the events depicted in the videotape. Notably, Officer Papa told the jurors that, during the encounter, he and Officer Matson identified themselves as police officers and instructed Appellant to drop his gun multiple times, but Appellant refused to do so. See id. at 263-265. As the trial court explained,

> Detective Sherwood's testimony regarding the video was merely cumulative of [Officer] Papa's own testimony. Detective Papa had already testified to the circumstances of his encounter with [Appellant] as he fled the scene; the surveillance video confirmed and corroborated [Officer] Papa's testimony regarding the interaction. The detective who recovered the surveillance video was permitted to testify regarding its contents to aid the jury in their understanding of the footage. She did not provide any new substantive testimony regarding Officer Papa's interaction with [Appellant]. Again, because the admission of Detective Sherwood's testimony in this regard was proper and within this [c]ourt's discretion, counsel was not ineffective for failing to object to such a meritless claim.

Trial Court Opinion, 6/1/17, at 12.

As noted above, if it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone. See Gibson, supra at 1128. Here, Officer Papa had already testified that he repeatedly ordered Appellant to drop his weapon, and that Appellant refused to do so. Thus, we cannot see how Appellant suffered any prejudice when Detective Sherwood told the jurors what they had already heard directly from Officer Papa. See Commonwealth v. Wallace, 724 A.2d 916, 923 (Pa. 1999) (holding that even if appellant's claim that

testimony was improperly admitted was meritorious, appellant could not prevail on an ineffectiveness claim because the allegedly improper testimony was merely cumulative of other properly admitted evidence). As Appellant has failed to demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for trial counsel's inaction, his second issue warrants no relief.

Appellant's third issue concerns a potential violation of his absolute right not to testify at his own trial. At trial, the Commonwealth presented a sweatshirt which appeared to depict a photograph of Appellant and Ferguson standing next to each other and holding guns. During cross-examination of Detective Sherwood, trial counsel attempted to elicit testimony from the detective that the photograph on the sweatshirt could not be authenticated. It is in this context that the following exchange occurred.

> Q. The only thing factually in this case that photo proves is that presumptively [Ferguson], despite what he told detectives when he gave them a statement, knew [Appellant], right?
>
> A. If we go by everything else you just asked me, no. They could have been photoshopped together.
>
> Q. Exactly.
>
> A. Yeah, I mean-
>
> Q. So there is no authentication whatsoever of this photograph; is there?
>
> A. Not unless [Appellant] or [Ferguson] want to do that.

Appellant's brief at 20-21 (citing N.T. Trial, 8/29/11-9/2/11, at 517).

Appellant contends that Detective Sherwood's final comment impermissibly called attention to his failure to testify, and impermissibly infringed on his constitutional right to remain silent, as protected by the Fifth Amendment to the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution. Appellant claims that, had trial counsel objected to the detective's testimony, there is a reasonable probability that the outcome of his trial would have been different.

Even assuming that Appellant could satisfy the first two prongs of the ineffectiveness test, we conclude that Appellant has not established that he suffered prejudice as a result of trial counsel's failure to object to the detective's comment. See Gibson, supra. Although any reference to an accused's decision to invoke the right to remain silent is a clear violation of the constitutional right to remain silent, even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt. See Commonwealth v. Whitney, 708 A.2d 471, 478 (Pa. 1998).

Here, the PCRA court determined that Detective Sherwood's comment was harmless. As the PCRA court observed, the comment was made in response to a question by his trial counsel and was designed to elicit the very response that was provided, i.e., that the photograph on the sweatshirt did not establish that Appellant and Ferguson knew each other because it could have been photoshopped, and that Detective Sherwood was unable to

authenticate it. See PCRA Court Opinion, 6/1/17, at 17-18. In other words, Detective Sherwood's overall response was favorable to Appellant, as she discounted the evidentiary value of the photograph. Detective Sherwood's comment did not suggest that Appellant's silence was evidence of his guilt; but, rather, that the Commonwealth could not authenticate the photograph without confirmation from the individuals purportedly depicted therein. Thus, the comment was made in a context unlikely to suggest to the jury that Appellant's silence was the equivalent of a tacit admission of guilt. See Whitney, supra.

The PCRA court additionally noted that the Commonwealth did not solicit, or otherwise repeat, refer to, or capitalize on Detective Sherwood's comment in any way. See PCRA Court Opinion, 6/1/17, at 18; see also Commonwealth v. Gbur, 474 A.2d 1151, 1155 (Pa.Super. 1984); Commmonwealth v. Anderjack, 413 A.2d 693, 699 (Pa.Super. 1979). Thus, the sole reference to Appellant's decision not to testify at trial was limited to Detective Sherwood's brief comment about how the photograph could be authenticated. See Gbur, supra at 1156 ("[T]he reference was an inadvertent slip by the witness that was not purposely elicited or exploited by the prosecutor.").

The PCRA court further determined that the comment was harmless, as "[t]he evidence of Appellant's guilt was overwhelming[,] and included [Appellant's] own confession that he was present at the scene and had a

firearm with him[, and a] surveillance video [showing Appellant] running from the scene." PCRA Court Opinion, 6/1/17, at 18. Our review confirms that the jury was presented with an audiotaped confession made to police by Appellant, wherein he admitted that he was at A.H.'s house with a gun, as well as the surveillance video showing him fleeing from the scene with a firearm. We conclude that ample proof was presented to convict Appellant, effectively neutralizing any minimal prejudicial effect from the detective's improper comment. See Commonwealth v. Boone, 862 A.2d 639, 646 (Pa.Super. 2004).

Further, in the instant case, the improper reference could not have seriously prejudiced Appellant in the eyes of the jury, since the jury had previously heard testimony that Appellant was not always silent, and had made a taped confession to police. See Anderjack, supra at 699. Finally, the trial court gave a "no adverse inference" charge to the jury prior to its deliberations, instructing its members that they "must not draw any inference of guilt or any other inference adverse to [Appellant] from the fact that [he] did not testify." See N.T. Trial, 9/2/11, at 587; see also Commonwealth v. Hannibal, 156 A.3d 197, 217 (Pa. 2016) (holding that juries are presumed to follow instructions).

Given these considerations, we conclude that Appellant has failed to establish, by a preponderance of the evidence, that, in light of his audiotaped confession to police and the surveillance videotape showing him

fleeing from the scene with a firearm, the outcome of the proceedings would have been different had trial counsel objected to Detective Sherwood's comment. See Boone, supra; Whitney, supra. Accordingly, we affirm the PCRA court's ruling as to Appellant's third issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/2018