J-S85010-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| AMIR FERGUSON | : | |
| | : | |
| Appellant | : | No. 537 WDA 2017 |

Appeal from the PCRA Order March 15, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012295-2010

BEFORE: BOWES, J., PANELLA, J., and STABILE, J.

MEMORANDUM BY BOWES, J.: FILED MAY 14, 2018

Amir Ferguson appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

In Appellant's prior appeal, this Court set forth the factual background of the case as follows:

> The evidence presented at trial established that [A.H.] and her four (4)[-]year[-old] son, [K.], lived at 2340 East Hills Drive in the City of Pittsburgh. [A.H.'s] boyfriend . . . stayed at the house occasionally, but was known to keep drugs and money in the house.
>
> In the early morning hours of July 11, 2010, [Appellant], along with two other men, co-[d]efendants Tyree Gaines and Richard Woodward, broke into [A.H.'s] residence for the purpose of stealing the drugs and money they knew to be in the house. The three (3) men initially approached the front door and knocked, then left. [A.H.], who was at home watching movies with her friends and son, looked out of the peep-hole in the door and saw the men wearing black clothing and scarves over their faces. She called another friend, [T.J.], who had just left, and asked him to look around the area. [T.J.] did not see anyone and returned to [A.H.'s] residence.

Approximately fifteen minutes later, the three men knocked again. This time [T.J.] looked out the peep-hole and after seeing the three (3) men, he instructed everyone to go upstairs and hide and to call the police. The group hid in [K.'s] room, some inside the closet and some behind the bed. [A.H.] was on the phone with 911 when the men broke the front door down and entered the house. The men searched the downstairs level of the home, but were unable to find the drugs and money. Two (2) of the men went upstairs and broke down the door of the bedroom where everyone was hiding. They demanded that [A.H.] tell them where the drugs and money were, and when she did not, they grabbed [K.], put [a] gun to his head and asked him where the items were. [K.] directed them to an air vent, where they found some money. They then let [K.] go, but put [a] gun to [A.H.'s] head and forced her to take them to the drugs. [A.H.] and the men went downstairs, when [Appellant], who had been standing by the patio door with an assault rifle, yelled that the police had arrived. The men ran upstairs.

[One or more of the intruders fired shots at the police from an upstairs window] and the officers returned fire. Downstairs, City of Pittsburgh Police Officer Steven Sywyj had entered the house in pursuit of the men. He encountered [A.H.] and told her to get out of the house. As she fled, she was [fatally wounded by] a bullet fired from the house. [T.J.] came out of the room in an attempt to find and aid [A.H.,] and was shot in the hand. Eventually, [Appellant] and Gaines jumped out of upstairs windows and were able to escape the police, but both were apprehended several days later. Woodward was shot while trying to escape and was apprehended at the scene.

Commonwealth v. Ferguson, 96 A.3d 1085 (Pa.Super. 2014) (unpublished memorandum at *1-3) (quoting Trial Court Opinion, 7/11/13, at 3-4).

The criminal cases against Appellant, Gaines, and Woodward were consolidated for trial. At the conclusion of the Commonwealth's case, the trial court granted Appellant's motion for judgment of acquittal as to first-degree murder. Ultimately, a jury convicted Appellant of second-degree

- 2 -

murder, robbery, and other related offenses. The trial court sentenced him to life in prison on the murder conviction, and no further penalty for the remaining convictions. Appellant did not file a post-sentence motion or a direct appeal.

On September 24, 2012, Appellant timely filed a pro se petition pursuant to the PCRA, seeking reinstatement of his direct appeal rights nunc pro tunc. The PCRA court granted relief. Thereafter, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied allowance of appeal. See Commonwealth v. Ferguson, 96 A.3d 1085 (Pa.Super. 2014) (unpublished memorandum), appeal denied, 94 A.3d 1007 (Pa. 2014).

On May 5, 2015, Appellant filed a timely pro se PCRA petition. The PCRA court appointed counsel, who filed an amended petition. The PCRA court subsequently issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, and on March 15, 2017, dismissed the petition. Appellant timely filed a notice of appeal, and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Thereafter, the PCRA court entered its Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises the following issues for our review:

1. Was [Appellant's] claim for relief properly cognizable under the [PCRA]?

2. Did the lower court abuse its discretion in denying the petition alleging counsel's ineffectiveness without a hearing, where [Appellant] established the merits of the claim that trial

- 3 -

counsel was ineffective for conceding during closing argument that [Appellant] was a co-conspirator and/or an accomplice in the robbery, and that he shot the victim while attempting to flee after the robbery?

3. Did the lower court abuse its discretion in denying the petition alleging counsel's ineffectiveness without a hearing, where [Appellant] established the merits of the claim that trial counsel was ineffective for failing to object to or request an immediate curative instruction when Detective [Margaret] Sherwood commented on [Appellant's] silence in the face of incriminating evidence?

Appellant's brief at 4 (capitalization omitted).

Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is de novo and our scope of review plenary.

Commonwealth v. Ford, 44 A.3d 1190, 1194 (Pa.Super. 2012) (citations omitted).

When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-

determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

> To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must … demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

Commonwealth v. Johnson, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). "If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." Commonwealth v. Gibson, 951 A.2d 1110, 1128 (Pa. 2002) (citing Commonwealth v. Travaglia, 661 A.2d 352, 357 (Pa. 1995)).

In his first claim, Appellant asserts that his ineffectiveness claims are cognizable under the PCRA because his petition was timely, he is currently serving a sentence of imprisonment, and his claims were not previously litigated or waived. We agree. See 42 Pa.C.S. § 9545. Although neither the PCRA court not the Commonwealth have challenged Appellant's claims on this basis, his concern presumably stems from his prior PCRA filing. See

42 Pa.C.S. § 9544(b) (providing that "an issue is waived if the petitioner could have raised it but failed to do so . . . in a prior state postconviction proceeding."). Notably, Appellant's prior PCRA petition sought only to reinstate his direct appeal rights. As that petition was granted, and Appellant pursued his direct appeal rights nunc pro tunc, we treat the instant petition as his first PCRA petition. See Commonwealth v. Fowler, 930 A.2d 586, 591 (Pa.Super. 2007) (holding that a PCRA petition brought after an appeal nunc pro tunc is considered an appellant's first PCRA petition).

In his second issue, Appellant contends that trial counsel rendered ineffective assistance by conceding in his closing argument that Appellant, while fleeing after committing a robbery, shot and killed the victim, acted with malice, and was complicit in the other crimes charged. According to Appellant, trial counsel's comments essentially supported a finding of second-degree murder, thereby relieving the Commonwealth of its burden of proving guilt beyond a reasonable doubt. Appellant claims that trial counsel had no reasonable strategy in making such comments, and denied Appellant a fair trial by arguing against his interests.

In its opinion, the PCRA court concluded that Appellant's second claim, lacked merit for the following reasons.

> At trial, the Commonwealth presented a theory of the case that [Appellant] fired the fatal shot[,] and . . . Woodward and . . . Gaines were his co-participants and co-conspirators in the robbery of [A.H's] house. In support of that theory, the Commonwealth presented evidence that [A.H.] was killed with a bullet fired from a .9mm Glock that evening. The

Commonwealth also presented [Appellant's] own statements admitting his presence at the scene and his involvement in the robbery.

At the close of the Commonwealth's case, [Appellant's] motion for judgement of aquittal was granted as to first-degree murder only. Thereafter, in his closing argument, trial counsel attempted to present an argument that the robbery was complete by the time the fatal shot was fired and that [Appellant's] actions in firing four (4) shots were reckless such that a verdict of guilty as to third-degree murder was the appropriate result.

After hearing all of the evidence presented at trial, this court can state with certainty that a complete acquittal was not possible. Having admitted his presence and participation in the robbery and with the ballistics and DNA evidence identifying [Appellant] as the shooter, [Appellant] was certain to be convicted of murder, be it second degree or third degree. Counsel's argument recognized that reality and was directed to attempting to mitigate the verdict downward to third-degree murder, and thus to spare his client the mandatory life sentence. That he was ultimately not successful does not mean his strategy was not the best available argument, (which, in fact, this court believes it was), nor does it mean that the execution of the closing argument was bungled (which this court believes it was not). Given the overwhelming forensic evidence placing [Appellant] at the scene and identifying him as the shooter, [Appellant] has failed to establish that the verdict would have been different had counsel not conceded that he was the shooter in his closing argument.

Trial Court Opinion, 6/29/17, at 5-6 (unnecessary capitalization omitted).

Based on our review, we conclude that the PCRA court's determination that Appellant suffered no prejudice due to his counsel's chosen strategy in making his closing argument is supported by the record and free of legal

error. See id. Accordingly, we affirm on the basis of the PCRA court's opinion as to Appellant's second issue.[1]

Appellant's third claim concerns a potential violation of his absolute right not to testify at his own trial. The contested statement occurred during cross-examination of Detective Sherwood by Gaines' counsel. The Commonwealth presented a sweatshirt which appeared to depict a photograph of Appellant and Gaines standing next to each other and holding guns. During cross-examination of Detective Sherwood, Gaines' counsel attempted to elicit testimony from the detective that the photograph could not be authenticated. It is in this context that the following exchange occurred.

> Q. The only thing factually in this case that photo proves is that presumptively [Appellant], despite what he told detectives when he gave them a statement, knew Tyree Gaines, right?

---

[1] In his brief, Appellant also argues that, while trial counsel informed the jury in his opening remarks that Appellant was high on marijuana, cocaine, heroin, and ecstasy at the time of the robbery, counsel nevertheless failed to develop a "diminished capacity" defense. Appellant claims that, if trial counsel had established a diminished capacity defense, Appellant's murder conviction would have been reduced to third-degree murder. Initially, we note that this claim is waived, as Appellant failed to raise it in his concise statement of errors complained of on appeal. See Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement . . . are waived."). Moreover, even if Appellant had preserved the issue for our review, we would have determined that it lacks merit for the reason that diminished capacity is available only as a defense to first-degree murder, of which Appellant was acquitted at the conclusion of the Commonwealth's case. See Commonwealth v. Russell, 938 A.2d 1082, 1092 (Pa.Super. 2007).

A.    If we go by everything else you just asked me, no.  They could have been photo-shopped together.

Q.    Exactly.

A.    Yeah, I mean-

Q.    So there is no authentication whatsoever of this photograph; is there?

A.    Not unless Tyree or [Appellant] want to do that.

Appellant's brief at 22 (citing N.T. Trial, 8/31/11, at 517).

Appellant contends that Detective Sherwood's final comment impermissibly called attention to his failure to testify.  Appellant claims his counsel should have objected to the comment, or requested an immediate curative instruction, as the comment infringed on his constitutional right to remain silent.  Although the trial court provided a "no adverse inference" instruction to the jury at the conclusion of trial, Appellant claims that the charge did not cure the harmful effects of Detective Sherwood's comment.

As noted above, to prevail on a claim of ineffective assistance of counsel, Appellant must demonstrate:  (1) that the underlying claim has arguable merit;  (2) that no reasonable basis existed for counsel's actions or failure to act;  and (3) that Appellant suffered prejudice as a result of counsel's error.  See Johnson, supra.  Even assuming that Appellant could satisfy the first two prongs of the ineffectiveness test, we conclude that Appellant has not established that he suffered prejudice as a result of trial counsel's failure to object to the detective's comment.  Although any

reference to an accused's decision to invoke the right to remain silent is a clear violation of the constitutional right to remain silent, even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt. See Commonwealth v. Whitney, 708 A.2d 471, 478 (Pa. 1998).

Here, the PCRA court determined that Detective Sherwood's comment was harmless. As the PCRA court observed, the comment was made in response to a question by co-defense counsel and was designed to elicit the very response that was provided, i.e., that the photograph on the sweatshirt did not establish that Appellant and Gaines knew each other because it could have been photo shopped, and that Detective Sherwood was unable to authenticate it. See PCRA Court Opinion, 6/29/17, at 11. In other words, Detective Sherwood's response was favorable to Appellant, as she discounted the evidentiary value of the photograph. Detective Sherwood's comment did not suggest that Appellant's silence was evidence of his guilt; but, rather, that the Commonwealth could not authenticate the photograph without confirmation from the individuals purportedly depicted therein. Thus, the comment was made in a context unlikely to suggest to the jury that Appellant's silence was the equivalent of a tacit admission of guilt. See Whitney, supra.

The PCRA court additionally noted that the Commonwealth did not solicit, or otherwise repeat, refer to, or capitalize on Detective Sherwood's

comment in any way. See PCRA Court Opinion, 6/29/17, at 11; see also Commonwealth v. Gbur, 474 A.2d 1151, 1155 (Pa.Super. 1984); Commmonwealth v. Anderjack, 413 A.2d 693, 699 (Pa.Super. 1979). Thus, the sole reference to Appellant's decision not to testify at trial was limited to Detective Sherwood's brief comment about how the photograph could be authenticated. See Gbur, supra, at 1156 ("[T]he reference was an inadvertent slip by the witness that was not purposely elicited or exploited by the prosecutor.").

The PCRA court further determined that "[t]he evidence of Appellant's guilt was overwhelming[,] and included DNA and ballistics evidence identifying [Appellant] as the shooter[,] and his own confession that he was present at the scene and had a firearm with him." PCRA Court Opinion, 6/29/17, at 11-12. Our review discloses that the jury was presented with a taped statement made to police by Appellant, wherein he admitted that he was at A.H.'s house with a gun to extort drugs. Additionally, Appellant's blood was found on the .9 mm Glock from which ballistics established the fatal bullet was shot. We conclude that ample proof was presented to convict Appellant, effectively neutralizing any minimal prejudicial effect from the detective's improper comment. See Commonwealth v. Boone, 862 A.2d 639, 646 (Pa.Super. 2004).

Further, in the instant case, the improper reference could not have seriously prejudiced Appellant in the eyes of the jury, since the jury had

previously heard testimony that Appellant was not always silent, and had made a taped statement to police. See Anderjack, supra, at 699. Finally, the trial court gave a "no adverse inference" charge to the jury prior to its deliberations, instructing its members that they "must not draw any inference of guilt or any other inference adverse to [Appellant] from the fact that [he] did not testify." See. N.T. Trial, 9/2/11, at 587; see also Commonwealth v. Hannibal, 156 A.3d 197, 217 (Pa. 2016) (holding that juries are presumed to follow instructions).

Given these considerations, we conclude that Appellant has failed to establish, by a preponderance of the evidence, that, in light of his taped statement to police and the forensic evidence linking him to the murder weapon, the outcome of the proceedings would have been different had trial counsel objected to Detective Sherwood's comment. See Boone, supra; Whitney, supra. Accordingly, we affirm the PCRA court's ruling as to Appellant's third issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/2018